FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISI

2009 SEP 18 PM 4: 5

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY | CIVIL ACTION NO. 09-6391 |
| VERSUS | JUDGE: |
| XL SPECIALTY INSURANCE COMPANY | MAGISTRATE: SECT. A MAG. 3 |

## COMPLAINT

Liberty Mutual Insurance Company ("Liberty Mutual") brings this action for damages and declaratory relief under 28 U.S.C. §§ 2201 against defendant XL Specialty Insurance Company ("XL"), alleging as follows:

### Parties

1.

Plaintiff Liberty Mutual is an insurance corporation incorporated under the laws of the State of Massachusetts, with its principal place of business in Boston, Massachusetts.

Fee 350
✓ Process 16.00
X Dktd
___ CtRmDep
___ Doc. No.

- 1 -

142951

2.

Upon information and belief, defendant XL is an insurance corporation incorporated under the laws of Delaware, with its principal place of business in Stamford, Connecticut.

**Jurisdiction and Venue**

3.

This Court has jurisdiction under 28 U.S.C. § 1332, because the dispute is between citizens of different states and the amount in controversy is in excess of $75,000.

4.

Venue lies in this District pursuant to 28 U.S.C. § 1391(a) because the policies of insurance were purchased and delivered in this District and a substantial part of the events or omissions giving rise to this insurance coverage dispute occurred in this District.

**Liberty Mutual's Insurance Policies Issues to Wilco**

5.

On June 15, 2004, Liberty Mutual issued automobile liability insurance policy number AS1-191-434292-014 (the "Liberty Mutual Policy") to Wilco Marsh Buggies and Draglines, Inc. ("Wilco") *See* Policy, attached as Exhibit A.

6.

The policy limits under the Liberty Mutual Policy are $1 million per occurrence. Exh. A at Policy Declarations.

7.

Upon information and belief, Wilco is a corporation incorporated under the laws of the State of Louisiana with its principal place of business in Harvey, Louisiana. Upon

142951

information and belief, Wilco operates several facilities in South Louisiana that manufacture heavy equipment used in amphibious conditions.

8.

The Liberty Mutual Policy was delivered to Wilco in Louisiana.

### Wilco's Excess Insurers

9.

Upon information and belief, XL issued Marine Excess Liability policy number UM00012724EL05A to Wilco effective February 17, 2005 (the "XL Policy").

10.

Upon information and belief, the XL Policy was delivered to Wilco in Louisiana.

11.

Liberty did not become aware of the existence of the XL Policy until sometime in 2009.

### The McClendon Lawsuit

12.

On March 10, 2005, Thomas McClendon ("McClendon") was seriously injured in Las Vegas, Nevada when a truck driven by a Wilco employee rolled over his legs. The accident occurred as McClendon was attempting to assist the driver in backing up the truck to a loading dock.

13.

Upon information and belief, both McClendon and the driver of the truck are Louisiana residents.

142951

14.

Upon information and belief, McClendon owns and operates trucking company based in Slidell. McClendon agreed that he would and transport materials and merchandise belonging to Wilco from Louisiana to a trade show in Las Vegas.

15.

On March 10, 2006, McClendon filed a civil action captioned *McClendon v. Wilco Marsh Buggies and Draglines, Inc., et al.*, No. A518678 in Nevada District Court for Clark County, seeking various damages, including medical expenses and lost income (the "McClendon Lawsuit").

16.

Nevada Attorney Bryan Lewis ("Lewis") was retained to defend the interests of Wilco. Throughout the course of the McClendon Lawsuit, Lewis sent status updates to Liberty Mutual and Wilco, informing the parties of the status of the claims.

17.

On January 9, 2009, Lewis advised Wilco that a verdict could exceed $2 million – well above the limits of the Liberty Mutual Policy – based on the opinions of the plaintiff's economic-damages expert, whose estimates ranged from $600,000 to $1.7 million.

18.

On January 16, 2009, Lewis sent an extensive pretrial update to Wilco and Liberty Mutual advising of a possible verdict in excess of policy limits.

19.

On February 5, 2009, Liberty Mutual advised Wilco that the plaintiff's economic-damages expert would opine that plaintiff's loss of earnings could exceed $1.7 million.

20.

On March 5, 2009, Lewis once more advised Liberty Mutual and Wilco that the possible adverse judgment could more than double policy limits.

21.

On March 27, 2009, counsel for Wilco received an offer of judgment in the amount of $1,685,337.54, an amount well above Liberty Mutual's policy limit of $1 million. Upon information and belief, this was the first formal demand received by Wilco from plaintiffs in the McClendon Lawsuit.

22.

Within four days of receiving the offer of judgment, both Lewis and Liberty Mutual wrote letters to Wilco informing it of the development and suggesting that Wilco contact its excess insurer, if any.

23.

On April 21, 2009, Lewis provided Liberty Mutual documentation evidencing the existence of the XL Policy.

24.

On April 22, 2009 – one day after notifying Liberty Mutual of the excess policy – Lewis notified XL of the offer of judgment. XL acknowledged the claim on May 5, 2009, showing a receipt of the claim on April 30, 2009.

25.

Despite this acknowledgement, XL took no actions to investigate the claim, nor did it take any actions to participate in trial preparation for this claim.

26.

On May 26, 2009, trial began in the McClendon case.

27.

On May 29, 2009, Lewis's office provided XL with copies of his pretrial reports and an update on settlement negotiations in the case. Again, XL took no action.

28.

During trial, on May 30, 2009 or shortly thereafter, Lewis again contacted XL and provided a trial update. Upon information and belief, Lewis informed XL that Plaintiffs' counsel had indicated a willingness to reduce their settlement demand, provided that the excess carrier participate in negotiations, but noted that plaintiff's demands remained in excess of $1 million.

29.

XL did not respond, and on June 1, 2009, the jury returned a verdict in favor of McClendon for approximately $4.2 million.

30.

At no point prior to the jury's verdict (nor after) did McClendon ever offer to settle within Liberty Mutual's $1 million policy limits.

31.

On or about June 5, 2009, at the suggestion of XL, Liberty Mutual hired the law firm of Clausen Miller to represent Wilco in its appeal of the judgment.

32.

On July 16, 2009, Liberty Mutual offered to pay its policy limits of $1 million during a telephone conference with Mr. McClendon's counsel in Louisiana. Pursuant to the terms of the Liberty Mutual Policy, such offer terminated Liberty Mutual's obligations under the

Liberty Mutual Policy, including without limitation the duty to defend and pay interest. Nevertheless, Liberty Mutual continued to pay defense counsel to prepare post trial motions and prepare to appeal.

33.

On or about July 29, 2009, at the request of XL and its chosen appellate counsel, Liberty Mutual hired a second Nevada attorney – Nelson Cohen of the Bremer Whyte firm – to serve as local counsel for Wilco in the appeal and post-trial matters.

34.

On September 15, 2009, the plaintiffs in the McClendon Lawsuit agreed to release all claims against Wilco and its insurers for $3.5 million (the "Settlement"), thus exhausting the limits of the Liberty Mutual Policy. *See* Settlement Agreement, attached as Exhibit B.

35.

In total, Liberty Mutual has paid its policy limits of $1,000,000, the entire defense of Wilco, and $269,266.05 pursuant to the supplemental pay provisions of the Liberty Mutual Policy, thereby fully satisfying its contractual obligations under the Liberty Mutual Policy.

36.

XL, on the other hand, has paid $2,230,733.95 of its $5,000,000.00 limits on the XL Policy, and nothing pursuant to the supplemental pay provisions of its policy.

### XL's Alleged Claims Against Liberty Mutual

37.

Shortly after the verdict against Wilco but prior to the Settlement, XL notified Liberty Mutual by letter that it was reserving all "rights in law and equity to file an action against Liberty to determine its rights and obligations under the policy."

38.

Subsequent to this letter, counsel for XL indicated on repeated occasions that Liberty Mutual (a) owed Wilco's excess insurers a duty to keep them informed of the progress of the litigation and of events that might implicate their coverage and (b) breached this alleged duty by failing to contact XL until April 2009. XL made repeated demand upon Liberty Mutual to pay more than its contractual obligations to settle the McClendon case, or XL would sue Liberty Mutual.

39.

Liberty Mutual repeatedly has denied XL's contentions, including specifically that a primary insurer owes an excess insurer any duty under Louisiana law. *Great Southwest Fire Ins. Co. v. CNA Ins. Cos.*, 557 So. 2d 966 (La. 1990).

40.

Upon information and belief, XL thereafter demanded as, in effect, a condition of XL fulfilling its contractual obligations under the XL Policy to fund its share of the settlement that Wilco assign to XL any rights it may have against Liberty Mutual, defense counsel, and several third parties.

41.

On September 4, 2009, Wilco agreed to "assign, convey, transfer and conventionally subrogate to XL any and all claims, rights, causes of action and rights of action including, but not limited to, those arising out of, resulting from or related to insurance coverage and/or claims handling practices related to" the McClendon Lawsuit. *See* Letter Agreement at ¶ 2, attached as Exhibit C. This assignment contained as express assignment of all rights to pursue claims against Liberty Mutual and Lewis. Id. at ¶¶ 2-5.

- 9 -

42.

Accordingly, an actual controversy exists with regard to the coverage provided by the Liberty Mutual Policy issued to Wilco.

### CLAIMS FOR DECLARATORY JUDGMENT

#### Count 1: Liberty Mutual Has Satisfied Its Contractual Obligations To Wilco Under The Liberty Mutual Policy

43.

Liberty Mutual restates and realleges Paragraphs 1 through 42 of its Complaint as though fully set forth herein.

44.

Liberty Mutual's obligation to indemnity Wilco for loss is limited to the $1,000,000 limit of the Liberty Mutual Policy, plus supplemental payments. Liberty Mutual's payment of $1,269,266.05 has exhausted the policy limits for indemnity and any supplementary payments that Liberty Mutual could owe. Accordingly, Liberty Mutual's obligations to Wilco under the Policy are fully satisfied and Wilco has no rights under the Policy against Liberty Mutual to assign to XL.

#### Count 2: Liberty Mutual Owes No Legal Duty to XL

45.

Liberty Mutual restates and realleges Paragraphs 1 through 44 of its Complaint as though fully set forth herein.

46.

Liberty Mutual neither owed nor breached any legal duty to XL (Wilco's excess insurer) in connection with its defense of Wilco in the McClendon Lawsuit.

142951

**Count 3:  Liberty Mutual Properly Discharged Its Duty to Defend Wilco**

47.

Liberty Mutual restates and realleges Paragraphs 1 through 46 of its Complaint as though fully set forth herein.

48.

Under the express terms of the Liberty Mutual policy, Liberty Mutual fully complied with its obligation to defend Wilco in the McClendon Lawsuit.

49.

Liberty Mutual provided Wilco with the firm of Lewis & Associates, LLC, as defense counsel.  That firm defended Wilco before and throughout the trial.  Thereafter, Liberty Mutual provided Wilco with additional counsel, Kim Kearny of Clausen Miller in Chicago and Nelson Cohen of Bremer Whyte in Las Vegas, notwithstanding that Liberty Mutual's obligations under the Policy terminated upon its offer to pay its policy limit.

50.

Accordingly, Liberty Mutual's obligation to defend Wilco was fully satisfied.

**Count 4:  Liberty Mutual Is Not Liable for the Acts of Wilco's Counsel**

51.

Liberty Mutual restates and realleges Paragraphs 1 through 50 of its Complaint as though fully set forth herein.

52.

XL alleges that defense counsel provided by Liberty Mutual to defend Wilco in *McClendon* improperly handled the defense.  *See* Ex. C. at p. 3.  Liberty Mutual denies XL's allegations.

53.

In any event, Liberty Mutual has no legal responsibility to Wilco or XL (or any subrogee or assignee of Wilco or XL) for any alleged damages caused by the fault of an attorney hired to defend an insured.

**PRAYER FOR RELIEF**

**WHEREFORE**, Liberty Mutual prays that, after due proceedings, the Court enter judgment in its favor, and against the defendants, declaring as follows:

1. That Liberty Mutual owes no legal duty to XL Specialty Insurance Company in connection with its handling of the lawsuit captioned *McClendon v. Wilco Marsh Buggies and Draglines, Inc., et al.*, No. A518678 and the settlement thereof;

2. That Liberty Mutual owes no additional duty to defend or indemnify Wilco Marsh Buggies and Draglines, Inc. or XL Specialty Insurance Company in the underlying suit of *McClendon v. Wilco Marsh Buggies and Draglines, Inc., et al.*, No. A518678 in Nevada District Court, Clark County, as its policy limits have been exhausted;

3. That Liberty Mutual did not breach any duty or obligation owed to Wilco Marsh Buggies and Draglines, Inc. by law or under the language of the Liberty Mutual Policy, including without limitation the obligation to keep Wilco informed or the obligation to settle within policy limits, and thus has no further liability to Wilco, or any subrogee or assignee thereof, in connection with Liberty Mutual's handling of the lawsuit captioned *McClendon v. Wilco Marsh Buggies and Draglines, Inc., et al.*, No. A518678 and the settlement thereof;

4. That Liberty Mutual bears no legal responsibility to Wilco Marsh Buggies and Draglines, Inc. or XL Specialty Insurance Company, or any subrogee or assignee thereof, for any

142951

alleged damages caused by the actions, inactions or fault of Lewis in handing the lawsuit captioned *McClendon v. Wilco Marsh Buggies and Draglines, Inc., et al.*, No. A518678 and the settlement thereof;

5.  That Liberty Mutual be awarded such other and further relief, legal or equitable, general or specific, as the Court may deem appropriate.

Respectfully submitted,

/s/ Adam J. Swensek

Judy Y. Barrasso, T.A., 02814
H. Minor Pipes, III, 24603
Adam J. Swensek, 30751
    OF
BARRASSO USDIN KUPPERMAN
  FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 2400
New Orleans, Louisiana 70112
Telephone: (504) 589-9700

*Attorneys for Liberty Mutual
Insurance Company*

142951